TYLER TARNEY
TTARNEY@GRSM.COM
DIRECT DIAL: (614) 917-1953



ATTORNEYS AT LAW
41 SOUTH HIGH STREET, SUITE 2495
COLUMBUS, OH 43215
WWW.GRSM.COM

January 17, 2022

**VIA ECF**

Hon. Thérèse Wiley Dancks
United States Magistrate Judge
Northern District of New York

      Re:    Adecco USA, Inc., et al. v. Staffworks, Inc., et al., 6:20-cv-00744-MAD-TWD

Dear Judge Dancks:

      Adecco writes with its positions on the pending discovery disputes per Dkt. 195 and 198, which track the still-unresolved areas listed in its comprehensive letter to Defendants (Ex. 1) before the meet and confer conferences. Adecco concluded its production of communications with the six selected clients through six rolling productions, including on Christmas Eve and New Year's Eve, within the timeframe set by Dkt. 195. Meanwhile, Defendants have still not complied with Dkt. 181—which ordered them to produce "any further documents regarding Staffworks customers who were Adecco customers with whom the individual defendants worked while in the employ of Adecco" by December 7, 2021—because they have not produced all communications with the six selected clients or the other clients implicated. Adecco has also produced 111,066 pages of documents to date, which is nearly double Defendants' production.

- **Adecco Information & Forensic Imaging**: **Defendants must provide the information and documents listed in Sec. II.A–D of Ex. 1 and produce Walser, Rodabaugh, Rodhe, Gloria, Flint, Standford, and Vitullo's Staffworks' computers for imaging.**

      The identification, descriptions, locations, and dates concerning the Adecco information and documents listed in Sec. II.A–D of Ex. 1 are essential to the Former Employees' non-disclosure, return-of-property, and duty-of-loyalty breaches, Walser's compliance with the injunction (Dkt. 105, at 6, Dkt. 118, at 6), Defendants' misappropriation and conversion, and Adecco's counterclaim defenses. Nothing Defendants have produced identifies or describes: (1) the location of all Adecco documents and property in Defendants' possession, custody, or control since May 12, 2020; (2) each instance Defendants opened, modified, received, obtained, were shown, copied, sent, disclosed, printed, deleted, destroyed, or otherwise used any Adecco documents, information, or property during the same period; or (3) for the 18 USB storage devices last connected to the Former Employees' Adecco computers from May 12–June 8, 2020, the computers they were plugged into (and when) or the dates they were turned over to counsel.

Defendants' objection that Adecco's requests extend to Staffworks' employees that are "not parties to the litigation" ignores that Staffworks has possession, custody, and control over them. When Defendants respond for the Individual Defendants, they dodge substantive answers through improper Rule 33(d) responses that point to emails produced or—as to their Staffworks' computers—by saying "[s]uch instances . . . would be recorded on the devices" while refusing to produce them for imaging. But emails don't reflect activities outside email accounts, such as on their local computers, in Staffworks' databases or employee user profiles, or printed or used in hard copy or otherwise. Further, as shown below, Defendants have not collected, searched for, or produced documents from critical email accounts used to send and receive many of the Adecco confidential and trade secret documents at issue or from various other ESI Sources used by the Individual Defendants after May 12, 2020 (*See* Ex. 3). Although Defendants recently produced some Adecco documents that resided on the Individual Defendants' Staffworks computers, the metadata is exceptionally limited: it lacks crucial information like when items were created and by whom, when they were accessed and saved, whether and when they were printed or copied, the editing history, and the current and original file and folder paths. Moreover, none of what Defendants produced addresses: (1) items that were deleted or destroyed (and when); (2) their activities between May 12, 2020 and when the items were gathered and produced over a year later;[1] and (3) the tangible Adecco devices, property, and documents implicated.

Defendants' evasive responses coupled with the shocking developments over the last few months underscore why imaging Walser, Rodabaugh, Rohde, Gloria, Flint, Standford, and Vitullo's Staffworks' computers is necessary. The September 2021 forensic analyses of the Former Employees' Adecco computers showed 18 USB storage devices last connected during their final days at Adecco from May 12–June 8, 2020—several of which are missing. Adecco's October 29, 2020 response to Staffworks' Interrogatory 11 (Ex. 4) provides long lists of examples of the thousands of documents they misappropriated, as well as their spoliation and other nefarious conduct. Defendants' production that same day confirmed the Former Employees used many of them on behalf of Staffworks during and after their employment at Adecco, and that they were sent to and used by numerous high-level Staffworks' executives including its Senior VP of Operations, HR Manager, Brand Manager, accountant, and Regional Manager. *See, e.g.*, Ex. 2, at Bates 58, 65, 71, 115–18, 131–34, 211–12, 313–16, 418–20, 426–27, 432–34, 797–98, 1035. The recent forensic analyses of the 14 USB storage devices that were imaged show: (1) 2.1M+ files; (2) 45,000+ Adecco files copied within days of joining Staffworks; (3) Walser alone accessed 200+ Adecco files after joining Staffworks, including 40+ after the case was filed and 30+ after Dkt. 21 ordered Defendants to preserve all "relevant and/or discoverable evidence" and warned of potential spoliation sanctions; and (4) 800+ Adecco files were deleted (with 40+ during the case and some after the injunction hearing began). And the only way to tell if they were connected to a particular computer is by imaging the computer. *See* Dkt. 175-2.

Defendants knew at the outset of the case what they had done, that they were sitting on tens of thousands of Adecco documents, and that they had already used Adecco's information to "attack" $6M in promised business. *See e.g.*, Ex. 2, at Bates 17, 133–14, 418–20, 432, 1035. But to avoid or minimize an injunction, and conceal this as long as possible, they refused to turn over the Adecco-Issued Devices, submitted false Declarations and testimony during the injunction phase (Ex. 6; *compare* Ex. 4), and initiated a discovery-stalling motion to dismiss on baseless grounds that never challenged the return-of-property, non-disclosure, or other provisions. Dkt.

---

[1] For instance, when Walser was asked to identify Adecco reports that she used, accessed, copied, or deleted, she states documents "that existed at the time of the hold will be produced."

142 at 7–8 ("Defendants fail to make any arguments regarding the following [provisions] . . . .").

The urgency of imaging Walser, Rodabaugh, Rohde, Gloria, Flint, Standford, and Vitullo's Staffworks' computers has exponentially increased since this issue was held in abeyance after Adecco's September 27 letter (Dkt. 175). In addition to the new developments, depositions will need to begin in a few weeks, the fact discovery deadline is 102 days away, and the Court has said it will not entertain extending deadlines. Given the page constraints, Adecco refers the Court to and incorporates the authority, evidence, arguments, and exhibits from Dkt. 175, its response to Staffworks' Interrogatory 11 (Ex. 4), the excerpts from Defendants' production (Ex. 2), and the excerpts from the Former Employees' Declarations and testimony (Ex. 6). The imaging should be governed under the protocol used for the last two rounds (Dkt. Nos. 165, 179) or the similar version Adecco proposed through Dkt. 175-1 that tracks how Walser's Adecco laptop was handled during Round 1 (*Compare* Dkt. 165 ¶¶ 9, 11; Dkt. 175-1 ¶¶ 11, 13), and the accommodations Adecco is willing to make are in pages 11–12 of Dkt. 175.

- **Texts, Social Media, Emails, & Other ESI Sources**: **Defendants must produce responsive: (1) texts and social media data; and (2) documents from the ESI Sources used by the Individual Defendants since 5/12/20 (as identified in Ex. 3).**

Much of the essential evidence reflecting solicitation of Adecco clients, colleagues, and associates, interference with Adecco's agreements, communications with key witnesses, and Defendants' other misconduct occurred via text messages and social media platforms like Facebook and LinkedIn. Two of Adecco's claims largely focus on Defendants' hijacking of the Adecco Corning Facebook Page, which served as a "vital" platform for recruitment and communications with clients, associates, and colleagues and often consumed "at least 50 percent" of the Former Employees' work time. Dkt. 97 ¶¶ 195–96, 205–06; Dkt. 68-1, at 108. Eight days into this case, Adecco sought immediate production of this critical text message and social media evidence. Dkt. 13 at 3. During the injunction and contempt hearings before any discovery occurred, Defendants introduced numerous exhibits reflecting incomplete text message exchanges with witnesses that weren't present or that otherwise referenced their conduct on Facebook and LinkedIn—which Defendants used on direct and to cross Adecco's witnesses.[2]

Now 556 days into this case and with the fact discovery cut-off 102 days away, Defendants still refuse to produce any texts or social media communications or data in response to 173 Adecco requests served across the ten Defendants that expressly request "text messages" and/or "Social Media Data." Defendants' unprecedented stonewalling has impacted every area of discovery, "cause[d] unnecessary delay," "needlessly increase[d]" costs, and is not "warranted by existing law." *See* Fed. R. Civ. P. 11(b)(1), (2). For instance, with 132 of these 173 requests, their responses say they'll "produce non-privileged documents in [their] possession, custody, or control"—and they can't hide behind their boilerplate objections now because none of these 132 responses say they are withholding documents. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). In responding to 14 of the other 41 requests, they refuse to produce any social media communications based on the notion that they are "more accessible to Adecco through the parties joint subpoena issued to Facebook" despite knowing (1) 67 days ago Facebook confirmed no

---

[2] *See e.g.*, Dkt. 60, Defs. Prel. Inj. Ex. Nos. 1 [¶¶ 22, 38, 39–40], 4, 9–10, 21 [¶¶ 4, 25, 26], 23 [¶¶ 23, 26], 32; Dkt. 68 at 95, 124, 199–01, 216, 233; Dkt. 68-1 at 59–61, 92–93, 127, 134, 152–53, 198; Dkt. 68-2 at 27, 83, 105, 129, 137, 172; 11/3/20 Hear. Tr. at 45–48, 100–02, 118–19.

non-public communications from the Adecco page still exist (because Gloria deleted the page) and (2) Adecco's requests seek communications from the Former Employees' own Facebook and LinkedIn accounts (which they used virtually every day at Adecco and still do at Staffworks), as well as communications from Staffworks' Facebook page. Worse, Defendants' counsel has had the entire data files from some of these Facebook accounts for several months. *See* Dkt. 166.

There are also dozens of responses where Defendants say they'll "produce non-privileged documents in [their] possession, custody, or control," and without saying anything would be withheld, where they've failed to or refuse to produce all responsive documents. Defendants must immediately produce responsive documents and they must include documents from the ESI Sources used by the Individual Defendants after May 12, 2020 (Ex. 3) other than those already provided to the neutral custodian. Defendants have not produced responsive documents from numerous ESI Sources in Ex. 3 including from various email accounts, cloud-storage accounts, third-party messaging applications, and other devices and accounts. Among the ESI Sources Defendants refuse to collect, search, or produce responsive documents from is the [jim.walser@adlertankrentals.com](jim.walser@adlertankrentals.com) account—which they claim is a "spouse" account they lack possession, custody, or control over. Yet their own Rule 26 disclosures identify this account and describe Adecco documents it contains in a list of items they have "possession, custody, or control" over that they "may use to support [their] claims or defenses." Ex. 5, p. 12 at Sec. (ii)(4). Karen Walser extensively used this account to send, receive, and print many of the Adecco confidential and trade secret documents at issue, this conduct was a significant focus of the injunction hearing, and the Court referenced this account and conduct in multiple orders. Dkt. 68-1, at 161, 186–87, 191–93, 207–08; Dkt. 71, at 3, 26; Dkt. 142 at 3; *see also* Dkt. 97, ¶¶ 68, 70, 75, 77, 79, 184, 189. This is the kind of gamesmanship Adecco is facing at every step.

- **Other Clients They Pursued**: **Defendants must provide the information and documents in Sec. IV.A–D of Ex. 1 regarding the Adecco clients the Former Employees contacted or pursued at Staffworks beyond the 13 that Staffworks secured business with.**

The Former Employees contacted and pursued dozens of clients they worked with at Adecco—beyond the 13 that Staffworks ultimately secured business with—on behalf of Staffworks while employed by Adecco and/or Staffworks. Even if Defendants couldn't steal the business, the information and documents listed in Sec. IV.A–D of Ex. 1 go to the heart of the Former Employees' breaches of their non-solicit, duty-of-loyalty, and non-disclosure covenants, as well as critical tortious interference, misappropriation, and causation issues. Before any discovery, Adecco provided extensive evidence of the Former Employees' solicitation and misconduct with these clients and the irreparable harm to its goodwill and relationships. *See, e.g.*, Dkt. 16 ¶¶ 104–06, 115; Dkt. Nos. 17, 18. The Court then enjoined five of them from "soliciting or attempting to solicit" Adecco clients they worked with at Adecco. Dkt. 71 at 43.

Despite all this, Defendants refuse to produce any discovery regarding these other clients based on the unbelievable position that evidence of unfair competition is completely irrelevant unless and until the unfairly competing party is rewarded. Because Defendants weren't ultimately successful in stealing business with these other clients, they refuse to identify the other Adecco clients the Former Employees worked with at Adecco and contacted and pursued at Staffworks, identify or describe the communications, or produce documents in response to numerous requests. This obstruction has left Adecco in the dark as to how many other clients are implicated—or the extent of their unfair competition—but Defendants' Rule 26 disclosures show that as of December 2020 there were 27. Ex. 5, at 12–15. Although the disclosures describe

emails, texts, and "phone records" in their "possession, custody, or control" that they "may use to support [their] claims or defenses," Defendants refuse to comply with their mandatory obligation to produce them even "absent a discovery request." *Id.* at 11–16; *Fort Worth Emps.' Ret. Fund v. J.P. Morgan*, 297 F.R.D. 99, 109 (S.D.N.Y. 2013). Some documents Defendants produced to other requests further show why this discovery is so critical. One shows Walser telling Staffworks and Vitullo she spoke to Zotos four days before leaving Adecco, stating "THEY ARE HOT for 100 [colleagues] in the next 2 weeks," and discusses Staffworks potentially "transition[ing] the 50 people that Adecco ha[d]" there. Ex. 2, at Bates 432–34. Around the same time, Walser misappropriated trade secret documents regarding Zotos (Dkt. 97 ¶¶ 76, 184) and various Staffworks' employees used Adecco's information to evaluate whether and how to target Zotos and 50+ other Adecco clients. Ex. 2, at Bates 747; *Id.* at 4–6.

- **Employee Solicitation & Tortious Interference**: **Defendants must produce the documents and information in Sec. V.A–H of Ex. 1 regarding their efforts to pursue the Former Employees, other current or former Adecco employees, and related issues.**

The Court previously recognized the irreparable harm that "would flow if Defendants were to solicit employees of Adecco." Dkt. 71 at 8. There is now no question that Staffworks, Vitullo, Walser, and Rodabaugh worked together to contact, pursue, and solicit the Former Employees, as well as the "#2 Adecco salesperson in the company and others" that were proposed "for immediate or future hire."[3] To the extent Adecco's discovery was targeted at solicitation of the Former Employees, Defendants provided extremely circular and evasive Interrogatory responses and flat-out refused to produce critical categories of documents. *See* Ex. 1, pp. 10–11. As to the other information and documents listed in Sec. V.A–H of Ex. 1, Defendants refused to provide information regarding persons "merely solicited, pursued, or called upon" and "not hired by Staffworks." But without this basic discovery Adecco is stymied from exploring the Former Employees' actual and attempted breaches of their non-solicit covenants, and the extent of Defendants' interference with Adecco's agreements. Because various Staffworks' executives were involved in hiring the Former Employees and/or in pursuing the $6M+ in promised business, their conduct and prior knowledge of Adecco's covenants is critical. Ex. 2, at Bates 71, 133–34.

- **Other Discovery: Defendants must produce the items listed in Sec. VII.A–B of Ex. 1.**

As explained in Sec. VII.A–B of Ex. 1, there is no basis for not: (1) identifying and producing (or logging) all communications by Defendants or their counsel with clients and other non-party witnesses related to or referencing the litigation, Adecco, or efforts to secure declarations or unsworn statements from them; or (2) identifying the last known contact information including cell phone numbers for the persons identified in Defendants' Initial Disclosures (Ex. 5) and producing the call histories after May 12, 2020 from the cell phones they used at Staffworks to call clients, colleagues, or associates that they worked with at Adecco.

> Respectfully submitted,
>
> */s/ Tyler Tarney*
>
> **GORDON REES SCULLY MANSUKHANI LLP**

---

[3] Ex. 2, at Bates 854–56; *see also* Dkt. 68-1, at 228; Ex. 2, at Bates 2039.