UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ADECCO USA, INC. and ADO STAFFING, INC.,

                          Plaintiffs,

  vs.                                                  6:20-CV-744
                                                         (MAD/TWD)

STAFFWORKS, INC., ANITA VITULLO,
KAREN WALSER, VICKI RODABAUGH,
DEBROAH ROHDE, MAURICA GLORIA,
BRIANNA FLINT, TAYLER FRAVEL,
KAREN STANDFORD, and SHELLY KRANZ,

                        Defendants.
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**GORDON & REES LLP**                    **COURTNEY C. WILLIAMS, ESQ.**
4031 Aspen Grove Drive - Suite 290
Franklin, Tennessee 37067
Attorneys for Plaintiffs

**GORDON & REES LLP**                      **JOHN TYLER MILLS, ESQ.**
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Attorneys for Plaintiffs

**GORDON REES SCULLY**              **TYLER L. MARTIN, ESQ.**
**MANSUKHANI LLP**                      **TYLER TARNEY, ESQ.**
41 South High Street, Suite 2495
Columbus, Ohio 43215
Attorneys for Plaintiffs

**PHILLIPS LYTLE LLP**                    **PRESTON L. ZARLOCK, ESQ.**
One Canalside                                      **JOSHUA S. GLASGOW, ESQ.**
125 Main Street                                  **MARY JANE MORLEY, ESQ.**
Buffalo, New York 12203
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On July 2, 2020, Plaintiffs Adecco USA, Inc. ("Adecco") and ADO Staffing, Inc. (collectively, "Plaintiffs") commenced this action alleging various violations of state and federal laws against Defendants Staffworks, Inc. ("Staffworks") and Anita Vitullo ("Vitullo"), as well as Defendants Karen Walser, Vicki Rodabaugh, Deborah Rohde, Maurica Gloria, Brianna Flint, Tayler Fravel, Karen Standford, and Shelly Kranz (collectively, the "Former Employees"). *See* Dkt. No. 1. Plaintiffs' second amended complaint asserts six causes of action against Defendants for breach of contract, tortious interference, actual trade secret misappropriation, conversion, trademark infringement, and unfair competition. *See* Dkt. No. 208 at ¶¶ 169-221. Defendants' second amended answer asserts two counterclaims against Plaintiffs: (1) tortious interference with contract; and (2) tortious interference with business relationships/prospective economic advantage. *See* Dkt. No. 214 at 41-45.

On July 10, 2020, the Court denied Plaintiffs' motion for a temporary restraining order, *see* Dkt. No. 14. Then, on September 15, 2020, the Court granted Plaintiffs' motion for a preliminary injunction in part. *See* Dkt. No. 71. A motion for reconsideration of the Court's order on its motion for a preliminary injunction was granted in part on November 30, 2020. *See* Dkt. No. 105. On June 23, 2021, the Court granted Plaintiffs' motion to consolidate this action with *Staffworks, Inc. et al v. Adecco USA, Inc.*, No. 6:20-CV-747, and denied Defendants' cross-motion to dismiss. *See* Dkt. No. 142. Currently before the Court is Plaintiffs' motion to dismiss Defendants' counterclaims. *See* Dkt. No. 218.[1]

---

[1] Defendants appear to briefly argue that this motion is untimely. *See* Dkt. No. 219 at 9. The Court disagrees. This Court's text minute entry dated August 4, 2021, states that the Court directed Plaintiffs to file this motion as soon as possible after Defendants submitted their second amended answer. The second amended answer was filed on March 4, 2022, *see* Dkt. No. 214, and this motion was filed just twenty-one days later on March 25, 2022, *see* Dkt. No. 218. The fourteen day time period for responses to an amended pleading under Rule 15(a)(3) of the Federal Rules of Civil Procedure is not applicable where the Court has "order[ed] otherwise" under that

2

For the reasons that follow, Plaintiffs' motion is denied.

## II. BACKGROUND[2]

According to Defendants, Adecco is a global staffing corporation that offers staffing services in the central and southern New York state markets. *See* Dkt. No. 214 at 34. Although each started at different times and held different positions, the Former Employees all worked for Adecco at some point and were required to sign an employment agreement upon starting employment. *See id.* at 31-33. None of the Former Employees were advised that they could consult an attorney prior to signing and they were not permitted to negotiate any terms of the form employment agreement. *See id.*

Defendant Vitullo is the president and sole shareholder of Staffworks, a corporation that offers staffing services in the central and southern New York state markets. *See id.* at 33. In March 2020, Defendants allege that Adecco began to institute pay cuts and furloughs for many of its employees, including some of the Former Employees. *See id.* at 35. Shortly thereafter, Defendants allege that Adecco instituted a restructuring plan that resulted in layoffs, terminations, and "a chaotic atmosphere" that rendered Adecco "unable to deliver the same caliber of services" as it had previously. *Id.* at 36-37. As examples of Adecco's alleged declining ability to provide adequate services, Defendants assert that Felix Schoeller North America, Inc. ("Felix Schoeller"), a corporate client of Adecco, "sought out staffing services from [other] companies ... because of poor service" and that Adecco associates[3] assigned to Boral Building Products, Inc. ("Boral"),

---

rule. Fed. R. Civ. P. 15(a)(3).

[2] For the purpose of deciding Plaintiffs' motion to dismiss, the Court draws the facts from Defendants' second amended answer.

[3] Associates are the individuals who are assigned by staffing companies, such as Adecco or Staffworks, to work for clients on a temporary basis.

another corporate client, "sought out assignment with Staffworks because they were treated poorly by Adecco employees and because Adecco failed to process their payroll paperwork." *Id.* at 37.

Between June and September 2020, each of the Former Employees obtained positions at Staffworks. *See id.* at 37-38. Defendants allege that Adecco and its employees thereafter "falsely stated to clients or potential clients of Staffworks, including but not limited to Pladis, Stateline Auto Auction, Boral, PSA Cleaning, United Auto Supply, and Kilian Manufacturing, that Defendants had sabotaged payroll, took illegal actions, and engaged in in other misconduct while working at Adecco." *Id.* at 38. Defendants also allege that Adecco "threatened litigation, which [it knew] to be baseless, against clients and potential clients of Staffworks, including but not limited to Felix Schoeller, Tessy Plastics Corp., Gatehouse Motel, and Killian Manufacturing." *Id.* The second amended answer alleges ten specific examples of these alleged statements and threats:

> a. In or about September 2020, Adecco employees Renee Johnson ("Johnson") and Trevor Clark ("Clark") falsely stated to Mike Lenzer and Jamela Vaughn of Pladis that Gloria and Flint sabotaged payroll before leaving Adecco and engaged in other unethical and illegal conduct relating to their work at Adecco.
>
> b. In or about July 2020, Adecco employees Nicole May, Megan Molik, Johnson, and Clark, falsely stated to Paul Tharrett and Angela Mansfield of Boral that Gloria and Flint sabotaged the Boral payroll before leaving Adecco.
>
> c. In or about June 2020, Adecco employees Johnson and Clark falsely stated to Aron Bristow of Stateline Auto Auction that Gloria and Flint had sabotaged the Stateline Auto Auction payroll while employed at Adecco.
>
> d. On or about June 17, 2020, Adecco employees Johnson and Clark falsely stated to Scott Shaw of PSA Cleaning that Gloria and Flint had engaged in unethical and illegal conduct relating to their work at Adecco.

> e. In or about June 2020, Adecco employee Laurlyn Bush ("Bush") falsely stated to Keith Flynn of Kilian Manufacturing that Walser had engaged in unethical and illegal conduct relating to her work at Adecco, and threatened that if he worked with Walser at Staffworks, Kilian Manufacturing would be sued.
>
> f. In or about June 2020, Adecco employee Johnson threatened Tina Devey of Pactiv, stating that ... Pactiv would be subjected to litigation if Pactiv worked with Staffworks.
>
> g. In or about July or August of 2020, Adecco employee Bush falsely stated to James Ranalli of United Auto Supply that Walser engaged in illegal conduct relating to her work at Adecco and warned that he should not do business with Walser at Staffworks.
>
> h. On or about September 21, 2020, Adecco sent a letter through its attorneys to Felix Schoeller impliedly threatening legal action against the company because it did business with Staffworks.
>
> i. On or about September 21, 2020, Adecco sent a letter through its attorneys to Tessy Plastics Corp. impliedly threatening legal action against the company because it did business with Staffworks.
>
> j. On or about September 21, 2020, Adecco sent a letter through its attorneys to Gatehouse Motel impliedly threatening legal action against the company because it did business with Staffworks.

*Id.* at 39-40. Defendants also allege that Adecco "falsely claimed the right to possess a Facebook page [Defendant] Gloria created in 2014 through her personal Facebook account." *Id.* at 40.

The second amended answer asserts that Adecco "made these false statements and threats out of malice" and intended those statements to induce one or more entities it knew to have current or prospective business relationships with Defendants to end those relationships or to not enter into new ones. *Id.* at 38. Defendants allege that they have "lost contracts and/or business opportunities with those clients and potential clients" and suffered damage to their "business reputation and ability to obtain future contracts and/or business relationships" as a result of these actions. *Id.* at 40-41.

Defendants' first counterclaim is for tortious interference with contract. *See* Dkt. No. 214

at ¶¶ 86-97.  Defendants allege that Adecco intentionally, maliciously, and illegally interfered with Staffworks' contractual relationships with various clients—specifically Boral, United Auto Supply, Felix Schoeller, Tessy Plastics Corp., and Gatehouse Motel—by (1) publishing false and defamatory statements, (2) making fraudulent misrepresentations to those entities that Defendants had sabotaged payroll, took illegal actions, and engaged in other misconduct while working at Adecco, and (3) threatening one or more frivolous lawsuits.  *See id.* at ¶¶ 87, 89, 90, 93.  Defendants allege that Adecco had knowledge of the contractual relationships between Staffworks and these entities and made the these allegedly false statements to induce one or more of those entities to end or limit their business relationship with Staffworks.  *See id.* at ¶¶ 88, 91.  Defendants' second counterclaim is for tortious interference with business relationships/prospective economic advantage.  *See id.* at ¶¶ 98-109.  There, Defendants allege that Adecco intentionally, maliciously, and illegally interfered with Staffworks' current and/or prospective business relationships with Pladis, Stateline Auto Auction, PSA Cleaning, and Killian Manufacturing, in addition to the entities previously noted, via the same conduct listed in Defendants' first counterclaim.

Plaintiffs now move to dismiss Defendants' counterclaims, first arguing that any alleged statements made by its employees to Defendants' clients about the conduct of the Former Employees was protected under the fair reporting privilege, regardless of when the statements were made, because those statements were "nothing more than a fair report of the same allegations asserted by [Plaintiffs] in this litigation" to interested parties.  *See* Dkt. No. 218-1 at 7.  Second, Plaintiffs argue that any alleged threats by its employees and attorneys to file litigation against Defendants' clients "fail to plausibly allege a *prima facie* case of tortious interference under New York law and fail to plausibly overcome the *Noerr-Pennington* doctrine." *Id.* at 10.

Third, Plaintiffs assert that any portion of Defendants' counterclaims related to the September 21, 2020 letters are barred by the absolute litigation privilege. *See id.* at 13-14. Finally, Plaintiffs argue that the remainder of Defendants' counterclaims "consist of vague and conclusory allegations of wrongful conduct" that are "insufficient to plausibly allege tortious interference with contractual or business relationships." *Id.* at 14-15. In opposition, Defendants argue that they have pled all the necessary elements for both of their tortious interference claims and that none of the affirmative defenses raised by Plaintiffs insulate them from liability under the facts alleged in Defendants' counterclaims. *See* Dkt. No. 219.

## III. DISCUSSION

### A.  Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

**B.    Fair Reporting Privilege**

Under Section 74 of the New York Civil Rights Law, "a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74. Section 74's protections "include[ ] statements published not only by the media, but also by parties or their counsel." *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019). "A statement comes within the privilege and 'is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021) (quotation omitted); *see also BYD Co. Ltd. v. VICE Media LLC*, No.

21-1097, 2022 WL 598973, *1 (2d Cir. Mar. 1, 2022), *cert. denied*, 2022 WL 4651855 (Oct. 3, 2022).

"A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether 'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Kinsey*, 991 F.3d at 178-79 (quotation omitted). "In other words, '[i]f the context in which the statement [is] made make[s] it impossible for the ordinary viewer [or reader] to determine whether [the publication] was reporting on a judicial proceeding, the absolute privilege does not apply.'" *Id.* at 179. "New York courts 'adopt a liberal interpretation of the fair and true report standard of [Section] 74 so as to provide broad protection to news accounts of judicial proceedings.'" *Id.*

"In addition, 'Section 74 applies only where the challenged report is "of" a proceeding.'" *Wexler*, 374 F. Supp. 3d at 311 (alterations omitted) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014)). "An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding." *Fine*, 11 F. Supp. 3d at 216 (citations omitted). In other words, "there must be some perceptible 'connection between the challenged report and the ... proceeding.'" *Id.* (quotation omitted). "'It is for the Court to determine as a matter of law if a publication is a "fair and true" report under section 74, unless the Court determines that an issue of fact remains.'" *Wexler*, 374 F. Supp. 3d at 312 (quotation omitted).

The Court cannot, at this early juncture, determine as a matter of law that the statements alleged in the second amended answer were privileged reports of a judicial proceeding. Initially, Plaintiffs' argument that its employees were merely "repeating the same positions that [Plaintiffs

have] taken in this litigation to interested parties," Dkt. No. 218-1 at 9, is unavailing because, as noted above, a mere overlap between the subject matter of the alleged statements and the subject matter of this proceeding "does not suffice" to provide a plausible connection between the statements and this proceeding. *Fine*, 11 F. Supp. 3d at 216.  Indeed, considering the second amended answer's allegations alone—as the Court must on a motion to dismiss—there is no indication that Plaintiffs' employees ever mentioned this judicial proceeding, to any extent, at the time they made the alleged statements to Defendants' clients.

In its reply, Plaintiffs additionally argue that, "[g]iven the timing and nature of the alleged statements, the only reasonable way to infer that these statements were plausibly defamatory is to view them in the context of the current litigation." Dkt. No. 220 at 6.  In other words, Plaintiffs appear to be asking this Court to infer that Defendants' clients *must have known* that the alleged statements were reports of this litigation because—without the context provided by this litigation—the alleged statements would be nothing more than "vague" and "implausible" allegations.  *Id.* at 6-7.[4]  The Court disagrees.  The second amended answer alleges, in short, that Plaintiffs' employees told Defendants' clients that Defendants Gloria and Flint "sabotaged payroll before leaving Adecco" and that Defendants Gloria, Flint, and Walser "engaged in other unethical and illegal conduct relating to their work" at Adecco. Dkt. No. 214 at 39-40.  It is not clear to this Court how knowledge of this litigation is, in any way, required for these unambiguous statements

---

[4] The Court declines to address Plaintiffs' argument that the common interest privilege might apply, as it was made for the first time in a footnote of its reply brief.  *See* Dkt. No. 220 at 7 n.2.  The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered.  *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007) ("[W]e decline to consider an argument raised for the first time in a reply brief"); *see also Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 1729796, *1 n.1 (S.D.N.Y. Apr. 14, 2015) ("Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it") (citations omitted).

to potentially damage the relationship between Defendants and their clients. Contrary to Plaintiffs' arguments, Defendants do not have to establish the exact "unethical and illegal conduct" Plaintiffs' employees were thinking of when they made these statements because a general accusation of unethical and illegal conduct alone appears sufficient, by itself, to harm the contractual or business relationship between Defendants and their clients.

In sum, the second amended answer alleges that Plaintiffs' employees made unsolicited and damaging claims about the Former Employees' conduct without ever connecting those statements to this litigation. Given that these allegations must be accepted as true and all reasonable inferences must be drawn in Defendants' favor, the Court cannot determine that, as a matter of law, the fair reporting privilege applies to these statements.

Accordingly, the Court denies Plaintiffs' motion to dismiss with respect to the fair reporting privilege.

**C.     Threats of Litigation and the *Noerr-Pennington* Doctrine**

"The First Amendment guarantees 'the right of the people ... to petition the Government for a redress of grievances.'" *Alfred Weissman Real Est., Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 106 (2d Dep't 2000) (quoting U.S. Const. amend. I). Thus, the Supreme Court has held, "under what has become known as the *Noerr-Pennington* doctrine, that citizens who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Id.* at 106-07. "Similarly, petitions made to the executive or judicial branches of government, *e.g.*, in the form of administrative or legal proceedings, are exempt from antitrust liability even though the parties seek ultimately to impede their competitors through these actions." *Id.* at 107. Although this doctrine initially arose in the antitrust field, the courts have expanded it to protect the "filing of

11

litigation ... which has been applied to bar claims of tortious interference predicated on the commencement of litigation." *I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 A.D.3d 206, 208 (1st Dep't 2005) (citations omitted).  Courts have further extended *Noerr–Pennington* to encompass "'concerted efforts incident to litigation, such as pre-litigation threat letters and settlement offers.'" *Singh v. NYCTL 2009-A Tr.*, 683 Fed. Appx. 76, 77 (2d Cir. 2017) (quoting *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 100 (2d Cir. 2000)); *see also MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360, 2021 WL 1193947, *9-10 (E.D.N.Y. Mar. 29, 2021) ("'[C]ourts have extended *Noerr-Pennington* to encompass concerted efforts incident to litigation, such as prelitigation "threat letters" and "settlement offers"'") (quotation omitted); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (same) (quotation omitted).

"*Noerr-Pennington* protection is not absolute, however." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 686 (2d Cir. 2009).  Under the "'sham exception' to this doctrine, 'activity "ostensibly directed toward influencing governmental action" does not qualify for *Noerr* immunity if it "is a mere sham to cover ... an attempt to interfere directly with the business relationships of a competitor."'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (quotation omitted).  "[T]o qualify as a 'sham,' a 'lawsuit must be objectively baseless' and must 'concea[l] an attempt to interfere directly with the business relationships of a competitor.'  In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition (*i.e.*, in bad faith)." *Id.* (quotation and quotation marks omitted).

"'The *Noerr-Pennington* doctrine is generally raised as an affirmative defense.'" *MMS Trading Co. Pty Ltd.*, 2021 WL 1193947, at *10 (quoting *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19-CV-8760, 2020 WL 5259283, *4 (S.D.N.Y. Sept. 3, 2020)).  "Dismissal is

12

appropriate based on an affirmative defense raised by a pre-answer motion to dismiss under Rule 12(b)(6) when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Id.* (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)). "'[P]ut another way, [a plaintiff] has no affirmative obligation to plead facts to show that the *Noerr-Pennington* doctrine does not apply, *i.e.*, that the sham exception applies.'" *Id.* (quoting *360 Mortg. Grp., LLC*, 2020 WL 5259283, at *4).

Here, the Court finds that it is not clear from the face of the second amended answer that the prelitigation threats to Defendants' clients were not a sham. The second amended answer alleges that these prelitigation threats were "baseless," "false," and made "out of malice" for the purpose of inducing "one or more of the entities to end its business relationships with Defendants or to not enter into one with Defendants." Dkt. No. 214 at ¶¶ 77-78. At this early stage, these allegations are sufficient to overcome the *Noerr-Pennington* defense because, as noted above, Defendants do not have any affirmative obligation at this stage of the litigation to plead facts to establish that the sham exception applies. *See MMS Trading Co. Pty Ltd.*, 2021 WL 1193947, at *10. Plaintiffs contend that their prior success on their motion for a preliminary injunction and Defendants' motion to dismiss renders the sham exception unavailable to Defendants as a matter of law. *See* Dkt. No. 218-1 at 12-13. This argument is not persuasive. The Court's prior orders only establish a likelihood of success on the merits *as against Defendants*. These threats were made against *Defendants' clients*, who are not parties to this matter. The Court has not ruled on the viability of any claims Plaintiffs may have against those entities.

Accordingly, the Court denies Plaintiffs' motion to dismiss with respect to the *Noerr-Pennington* doctrine.

**D.     The Litigation Privilege**

It is well established under New York law that "absolute immunity from liability *for defamation* exists for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved.'" *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015) (emphasis added) (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)). However, it is not clear whether, under New York law, the litigation privilege can or should be extended to preclude tortious interference claims in addition to defamation claims.

Initially, contrary to Plaintiffs' argument, *Academy Orthotic & Prosthetic Associates IPA, Inc. v. Fitango Health, Inc.* ("*Academy Orthotic*"), does not explicitly hold that the litigation privilege applies to tortious interference claims. *See Academy Orthotic*, No. 19-CV-10203, 2020 WL 6135762 (S.D.N.Y. Oct. 16, 2020). In *Academy Orthotic*, the court first reasoned that, because the plaintiff's defamation and tortious interference claims were both supported by the same statements, "the success of [the] [p]laintiffs' tortious interference claims [was] predicated on the success of their defamation claims." *Id.* at *4. The court then held that the plaintiff's defamation claim failed because the defendants' statements were privileged and, therefore, the related tortious interference claim must also fail. *See id.* at *5. In other words, the court first dismissed the plaintiff's defamation claim under the litigation privilege, and then separately dismissed the plaintiff's tortious interference claim because it could not survive without the defamation claim. This indirect method of applying the litigation privilege to tortious interference claims cannot be used in this case inasmuch as the tortious interference claims here are not predicated on separate defamation claims; there are in fact no defamation claims alleged by Defendants in this matter.

The Court has located two other cases discussing the applicability of the litigation

14

privilege to tortious interference claims under New York law. The first case is *ExpertConnect, LLC v. Fowler*, where a district court concluded that "the litigation privilege can bar a tortious interference claim." *ExpertConnect, LLC v. Fowler*, No. 18 CIV. 4828, 2020 WL 3961004, *5 (S.D.N.Y. July 13, 2020) (citing *Front, Inc.*, 24 N.Y.3d at 718). The second case is *Chutko v. Ben-Ami*, where the New York Appellate Division held that the plaintiffs' "defamation and tortious interference with contract" claims were correctly dismissed because they "failed to show that the litigation ... was not brought in good faith" and the underlying attorney's statements were pertinent to that good faith litigation. *Chutko v. Ben-Ami*, 150 A.D.3d 582, 583-84 (1st Dep't 2017) (citing *Front, Inc.*, 24 N.Y.3d at 715). In both cases, the courts supported their holdings with only an unelaborated cite to *Front, Inc.*

In this Court's estimation, *Front, Inc.* does not so clearly support the application of the litigation privilege to tortious interference claims. First, the focus of the New York Court of Appeals' decision in *Front, Inc.* was whether the litigation privilege should be extended to cover "statements made [by attorneys] prior to the commencement of an anticipated litigation." *See Front, Inc.*, 24 N.Y.3d at 720. In making that determination, the Court of Appeals never discussed the litigation privilege in the context of tortious interference claims. *See id.* at 715 ("If the statements are pertinent to a good faith anticipated litigation, no cause of action for *defamation* can be based on those statements") (emphasis added); *id.* at 718 ("[A]bsolute immunity from liability for *defamation* exists for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved'") (emphasis added). Second, a close reading of the underlying Appellate Division decision in *Front, Inc.* reveals that the Appellate Division never directly applied the litigation privilege to the plaintiff's tortious interference claim. *See Front,*

15

*Inc. v. Khalil*, 103 A.D.3d 481, 483-84 (1st Dep't 2013). Rather, similar to *Academy Orthotic*, the Appellate Division applied the litigation privilege to the plaintiff's libel *per se* claim, which it dismissed. *See id.* at 483. The Appellate Division then separately concluded that, "absent the libel claims," the third-party complaint no longer adequately "allege[d] the 'malice' or use of 'improper or illegal means' [elements] required to state a cause of action for tortious interference with business relations." *Id.* at 484.

Absent some clear authority on this issue, the Court is reluctant to extend a well-established doctrine of New York law beyond the bounds previously set forth by New York courts. *See Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2d Cir. 1985) ("As a federal court sitting in diversity, we will not extend the application of this state law"); *see also Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986) ("[I]t is clear that under New York law litigation or the threat of litigation can give rise to a claim for tortious interference with contractual relations"). Thus, the Court concludes that the litigation privilege is not applicable to tortious interference claims.

Accordingly, the Court denies Plaintiffs' motion to dismiss with respect to the litigation privilege.

**E.     Failure to State a Claim**

*1. Tortious Interference with Contract*

"[U]nder New York law, '[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. Appx. 102, 104 (2d Cir. 2012)

16

(quoting *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996)).

The second amended answer plausibly alleges a tortious interference with contract claim under New York law. The second amended answer alleges that Staffworks entered into valid enforceable contracts with various clients, including Boral, United Auto Supply, Felix Schoeller, Tessy Plastics Corp., and Gatehouse Motel. *See* Dkt. No. 214 at ¶ 87. The second amended answer further alleges that Plaintiffs had knowledge of the contractual relationships between Staffworks and these entities, *see id.* at ¶ 88, and intentionally and maliciously interfered with those contractual relationships by, for example, (1) making fraudulent and false misrepresentations to those clients that Gloria, Flint, and Walser sabotaged payrolls or engaged in other unethical and illegal conduct before they left Adecco; and (2) threatening one or more frivolous lawsuits against those clients if they worked with the Former Employees or Staffworks, *see id.* at ¶¶ 80(a)-(j), 89-90, 93. Finally, the second amended answer alleges that as a result of this interference, Defendants have lost existing contracts with those clients and suffered damage to their business reputation and ability to obtain other future business. *See id.* at ¶ 96. Accepting these allegations as true and drawing all reasonable inferences in Defendants' favor, the Court finds that these allegations are sufficient to withstand Plaintiffs' motion to dismiss.

Accordingly, Plaintiffs' motion to dismiss Defendants' first counterclaim for tortious interference with contract is denied.

### *2. Tortious Interference with Business Relationships/Prospective Economic Advantage*

"In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Purgess v.*

*Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994) (citation omitted); *see also PPX Enter., Inc. v. Audio Fidelity Enter., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)).  This claim may be pled as an alternative to a tortious interference with contract claim in the event that a court finds that the contract at issue is unenforceable.  *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02-CV-1363, 2003 WL 21203503, *7 (S.D.N.Y. May 22, 2003).

"To establish tortious interference with business relations under New York law, 'the plaintiff must show that defendant's conduct was not "lawful" but "more culpable."'" *Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 566 (S.D.N.Y. 2020) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).  "Although 'as a general rule,' a defendant's conduct must amount to a 'crime or independent tort' to support liability for tortious interference with business relations, an exception to this rule 'has been recognized where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs' or employs 'wrongful means.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 190, 192).  "Even when a defendant's sole purpose was not to injure the plaintiff, New York courts have held that the use of 'wrongful means' can support a claim for tortious interference." *Id.* (citing *Carvel Corp.*, 3 N.Y.3d at 192). "Wrongful means 'include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 191).

Defendants have adequately pled a claim for tortious interference with business relationships/prospective economic advantage under New York law.  The second amended answer alleges that Staffworks developed current and prospective business relationships and opportunities with potential and existing clients to provide staffing services, including Boral, United Auto Supply, Felix Schoeller, Tessy Plastics Corp., Gatehouse Motel, Pladis, Stateline

Auto Auction, PSA Cleaning, and Killian Manufacturing.  *See* Dkt. No. 214 at ¶ 99.  The second amended answer further alleges that Plaintiffs knew of these current or prospective business relationships and intentionally and maliciously interfered with them though fraudulent and false misrepresentations concerning the conduct of the Former Employees and threatening one or more frivolous lawsuits.  *See id.* at ¶¶ 80(a)-(j), 101-02, 105.  It further asserts that Plaintiffs took these actions for the sole purpose of maliciously inflicting intentional harm on Defendants and to induce one or more of Defendants' clients to end their business relationships with Defendants.  *See id.* at ¶¶ 103, 106.  Finally, the second amended answer asserts that Defendants suffered damage to their business reputation and ability to obtain other future business by virtue of Plaintiffs' wrongful interference with their business relationships.  *See id.* at ¶¶ 107-08.  Accepting these allegations as true and drawing all reasonable inferences in Defendants' favor, the Court finds that these allegations are sufficient to withstand Plaintiffs' motion to dismiss.

Accordingly, Plaintiffs' motion to dismiss Defendants' second counterclaim for tortious interference with business relationships/prospective economic advantage is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion to dismiss (Dkt. No. 218) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 1, 2022
      Albany, New York

Mae A. D'Agostino
U.S. District Judge