UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADECCO USA, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | Case No. 6:20-cv-00744 |
| ) | |
| vs. ) | District Judge D'Agostino |
| ) | |
| STAFFWORKS, INC., et al. ) | Magistrate Judge Dancks |
| ) | |
| Defendants. ) | |
| ) | |

**OBJECTIONS TO ORDER (Dkt. 255) DENYING PRE-MOTION LETTER REQUEST (Dkt. 246) TO FILE MOTION FOR SANCTIONS BASED ON DEFENDANTS' SPOLIATION OF EVIDENCE AND RELATED VIOLATIONS OF VARIOUS ORDERS**

Among the various rulings in the Court's December 20, 2022 order, Dkt. 255, was the denial of "Plaintiff's letter request, Dkt. No. 246, to file a motion for spoliation." Dkt. 255 at 4-5. Adecco[1] respectfully objects to that portion of the order under Rule 72(a). Adecco addresses the substance of the Court's concerns about such a motion below, but as an initial matter, the portion of the order denying Adecco's ability to even file its motion is clearly erroneous and contrary to law because it prevents Adecco from filing a motion authorized by the Federal Rules of Civil Procedure. Adecco's pre-motion request was made in good faith and is supported by substantial evidence—including Defendants' own admissions concerning their destruction of evidence and false testimony. Although Adecco appreciates the reasons that the Court requires pre-motion letters, a three-page letter is not an adequate substitute for a fully-briefed and supported motion for sanctions. For these reasons, Adecco requests that the Court issue an order sustaining Adecco's

---

[1] Plaintiffs ADO Staffing, Inc. and Adecco USA, Inc. are collectively referred to as "Adecco."

objections, permitting Adecco to file its proposed motion within 21 days of the order resolving Adecco's objections, and that the Court consider the merits of Adecco's motion after full briefing.

## I. BACKGROUND

As Adecco's fully-briefed motion will demonstrate, Defendants' intentional, repeated, bad-faith spoliation of evidence has severely prejudiced Adecco's ability to prosecute its action by precluding Adecco from obtaining critical evidence of Defendants' misconduct that it cannot otherwise obtain, including extensive evidence relating to key meetings between Walser and Staffworks' executive team and evidence of Defendants' use of Adecco's confidential business information. Indeed, Defendants' egregious destruction of evidence makes it impossible for Adecco to know the extent of Defendants' misconduct. That is why the Second Circuit has been a leader in preservation of evidence issues and why intentional, bad-faith spoliation is treated so harshly.

On May 12, 2020, while still employed at Adecco, Walser contacted Anita Vitullo, Staffworks' owner and "a long time competitor" of Adecco, to relay that Adecco's "business model was changing" and that Walser was available for hire "along with other Adecco team members." Ex. 1, Staffworks Production Excerpts, at SW_0007169-70. That same week, while still employed at Adecco, Walser began meeting with lawyers about potential legal ramifications for joining a direct competitor of Adecco in violation of the restrictive covenants in her Adecco employment agreement. Ex. 2, Walser Dep. 61-62. Within two weeks—before any of the Former Employees left Adecco—Staffworks was also "spending time & money prepping" for a "legal battle with Adecco." Ex. 3, Vitullo Dep. 206; Ex. 2, Walser Dep. 153-54. Despite the potential cost and effort of litigation

with Adecco, Vitullo was convinced that "[t]he millions we will make from the former Adecco accounts" would "make the work and money, the legal battle . . . worth it." Ex. 3, Vitullo Dep. 214.

On June 17, 2020, Adecco sent evidence preservation letters to Staffworks, Walser, Rodabaugh, Flint, Rohde, and Gloria, notifying them "of [their] legal obligation to preserve all evidence" including "emails, Facebook and other social media, ESI retained on mobile devices, including texts, as well as computers and all files and file fragments containing information from electronic calendars or contracts" including on "personal computers and personal mobile devices and accessories and home devices." Dkt. 1-27. Evidence preservation letters were sent to Standford and Fravel on June 25 and 26, 2020, and to counsel for Kranz on September 25, 2020. Dkt. 1-29; Dkt. 1-34; Ex. 4, 9/25/20 Letter. Each letter was provided to Vitullo and also forwarded to an attorney for Staffworks. Ex. 5, Williams Dep. 204-05.

According to Staffworks' 30(b)(6) representative, the extent of its initial and subsequent "litigation hold" consisted of one phone call on June 17, 2020 made by Vitullo or an unidentified person at Staffworks to its third-party IT provider, Cappraro, orally conveying to "put a hold on." Ex. 6, Staffworks 30b6 Dep. 209-10, 219, 221. Staffworks did not notify Huey or anyone from FSS group about the litigation hold. *Id.* at 221. Nobody at Staffworks was notified of the legal hold other than Vitullo and VP of Operations Todd Consilio confirmed he wasn't notified. *Id.* at 227-28. Staffworks did not communicate with the Former Employees to notify them of the need to preserve evidence, and the Former Employees were only later ordered to turn in certain devices. *Id.* at 229-

32; *see also* Ex. 7, Standford Dep. 234; Ex. 5, Williams Dep. 213; Ex. 2, Walser Dep. 204-05.

On July 10, 2020, after the lawsuit was filed, the Court issued an order regarding Defendants' evidence-preservation obligations, which reminded Defendants that "they are required to preserve all relevant and/or discoverable evidence" and that the "destruction of such evidence could result in a spoliation sanction and/or a finding of contempt of court." Dkt. 21. In light of evidence preservation concerns raised by Adecco during a discovery conference in May 2021, the Court again instructed Defendants to "ensure that Staffworks maintains electronic information as discussed during the conference and previously ordered by the Court." Dkt. 136. Unfortunately, Defendants' early anticipation of litigation with Adecco, nine evidence preservation letters sent by Adecco, and various orders regarding Defendants' preservation obligations were insufficient to prevent Defendants from destroying large quantities of critical evidence throughout the case—and Adecco has provided several examples below.

On October 18, 2022, in compliance with Individual Rule 2(A)(i), Adecco filed a pre-motion letter requesting permission to file a motion for sanctions based on Defendants' spoliation of evidence and related violations of various orders, and requesting a pre-motion conference to discuss the issues raised by Adecco's pre-motion letter, a briefing schedule, and potential hearing dates. Dkt. 246 at 1. While noting that the full scope of Defendants' spoliation was too great to capture in a three-page, double-spaced pre-motion letter, Adecco's letter outlined numerous categories of spoliated evidence. *Id.* at 1-2. It also detailed Defendants' intent to deprive Adecco of the destroyed evidence. *Id.* at 2-3.

On December 20, 2022, the Court denied Adecco's pre-motion letter request on the grounds that "Defendants . . . have produced hundreds of emails, cloud, stored data, smart phone data, computer data, and storage device data" during "extensive discovery" and Adecco's three-page pre-motion letter did not show "how [Plaintiffs] have been prejudiced" or "that any party acted in bad faith." Dkt. 255 at 4. Adecco now timely objects within the fourteen-day deadline set by Rule 72(a). *See* Fed. R. Civ. P. 72(a).

## II. ARGUMENT

### A. Denying Adecco the chance to file its proposed motion is contrary to Second Circuit precedent, Judge D'Agostino's Individual Rules and Practices regarding pre-motion letters, and the 7/10/20 order outlining potential consequences for Defendants' failure to preserve evidence.

"It is well settled that [a] Court cannot prevent a party from making a motion that it is entitled to bring under the Federal Rules of Civil Procedure." *Wechsler v. Hunt Health Systems, Ltd.*, 216 F. Supp. 2d 347, 350 n.3 (S.D.N.Y. 2002) (citing *Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000)). The Second Circuit has long recognized that "a court has no power to prevent a party from filing pleadings, motions, or appeals authorized by the Federal Rules of Civil Procedure" absent "extraordinary circumstances, such as a demonstrated history of frivolous or vexatious litigation or a failure to comply with sanctions imposed for such conduct." *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) (granting mandamus and permitting party to file amended answer permitted by Federal Rules).

Thus, "while it is within [a] judge's discretion to hold a pre-motion conference . . . the judge may not require the court's permission be secured at such a conference before a party may file a motion." *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995); *see also MacDraw, Inc. v. Klayman & Associates, P.C.*, 73 F.3d 1253, 1256 n.2

5

(2d Cir. 1996) (emphasizing district court's inability to prevent a party from making any filing authorized by the Federal Rules). This well-settled principle is reflected in Judge D'Agostino's Individual Rules and Practices, which provide that "[u]pon review" of a pre-motion letter "the Court will *either* permit the filing of the proposed motion or issue an order scheduling a conference with the parties to discuss the issues raised." Individual Rule 2(A)(i) (emphasis added). Consistent with Second Circuit precedent, the Individual Rules and practices do not contemplate denying a party from filing an intended motion.

A motion seeking sanctions for the opposing party's spoliation of evidence is expressly permitted by Rule 37, which provides, in relevant part, that if a party fails to obey a discovery order, the court 'may make such orders in regard to the failure as are just.'" *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (*quoting* Fed.R Civ. P. 37(b)(2). Under Rule 37, "a district court has wide discretion in sanctioning a party for discovery abuses." *Id.* at 107. Similarly, "Rule 37(e) governs a party's failure to preserve electronically stored information." *In re Aluminum Warehousing Antitrust Litigation*, No. 13-md-2481, 2016 WL 11727416, at *3 (S.D.N.Y. May 19, 2016). Courts regularly award spoliation sanctions on motions brought by parties under Rule 37(b) and (e).[2] Adecco's proposed motion for spoliation sanctions based on Defendants' destruction of evidence is therefore a motion authorized by Rule 37(b) and (e). *See Eisemann*, 204 F.3d at 397; *Milltex*, 55 F.3d at 39; *Richardson*, 825 F.2d at 652.

---

[2] *See, e.g., CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 86 (S.D.N.Y. 2022) (granting spoliation sanctions on motion brought under Rule 37(e)); *Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, (E.D.N.Y. 2018) (affirming spoliation sanctions on motion brought under Rule 37(b)); *see also S.E.C. v. Collector's Coffee Inc.*, No. 19 Civ. 4355, 2021 WL 266284, at * (Jan. 27, 2021) (questioning party's failure to explain "why a motion under Rule 37 . . . could not address any alleged destruction of evidence.").

6

Adecco's proposed motion was also contemplated by the July 10, 2020 order reminding Defendants of their evidence preservation obligations and instructing them that "[t]he destruction of such evidence could result in a spoliation sanction and/or a finding of contempt of court." Dkt. 21. In light of Defendants' violation of this order, Adecco should be entitled to move for the relief contemplated by the Court at the outset of the case as a consequence for the destruction of evidence that has now demonstrably occurred. There is nothing in the record to suggest extraordinary circumstances, such as a demonstrated history of frivolous or vexatious litigation or a failure to comply with sanctions, to support denying permission to file the motion. *See Richardson*, 825 F.2d at 652. Because denying Adecco from filing its motion is contrary to Second Circuit precedent, the Individual Rules and Practices, and the July 10, 2020 order, Adecco's objections should be sustained, Adecco should be permitted to file its proposed motion, and the merits of it should be considered after it has been fully briefed.

    **B. Defendants spoliated thousands of files, data and communications from phones used by the Former Employees, data backups, and hardcopy documents that have not otherwise been produced, which has severely prejudiced Adecco, and was done intentionally, in bad faith, and in violation of their preservation obligations and various orders.**

As Adecco's pre-letter motion indicated, a three-page, double-spaced letter cannot act as a substitute for the factual showings that Adecco would make in its fully-supported motion, including as to the issues of prejudice and bad faith. Dkt. 246 at 1-2. In light of the Court's concerns about these issues, however, Adecco more fully describes below what it will show through its motion.

First, there is no question that Defendants spoliated evidence, *that has not otherwise been produced*, including information in thousands of Adecco files deleted from USBs

7

connected to the Former Employee's Adecco laptops, data and communications from phones used by the Former Employees, and thousands of files deleted from the Former Employees' laptops prior to resigning.[3] *See* Part II.B, *infra*; *CBF Industria*, 342 F.R.D. at 86. Indeed, the very fact that Defendants destroyed this information precludes Plaintiffs from knowing with any certainty the full extent of the information spoliated. Examples of Defendants' extensive spoliation include, among other things:

**USB Storage Devices.** Walser and Standford failed to produce five USB storage devices ("USBs") that they connected to their Adecco-issued laptops between May 16–June 1, 2020. Ex. 2, Walser Dep. 158-59, 164; Ex. 7, Standford Dep. 135-36. Walser claimed she inexplicably "lost" two of them that she connected to her Adecco laptop the day before she met with Staffworks' executives to discuss Adecco accounts and confidential sales and revenue information on Adecco's branches in the Upstate New York region. Ex. 2, Walser Dep. 161-64. Standford admitted that she "destroyed a lot of things" including three USBs that she "threw . . . in the garbage." Ex. 7, Standford Dep. 135-36. These USBs represent nearly 40% of those plugged into Walser and Standford's Adecco laptops during May and June 2020—the others that Walser and Standford

---

[3] Adecco notes that issues related to Defendants' destruction of electronic evidence will be further developed during the expert deposition of Avalon, the third-party forensic examiner, responsible for examining and producing analyses and files related to the Adecco-issued devices and USBs turned over by the Former Employees during discovery. Dkt. Nos. 126, 165, 179. Under a separate portion of the December 20, 2022 order, the parties were ordered to proceed with Avalon's deposition on or before January 20, 2023. Dkt. 255 at 2-3; *see also* Dkt. 242 at 2 ("Courts regularly permit expert depositions of court-appointed neutrals, especially as to technical and spoliation issues.") (citations omitted); Dkt. 242 at 3 ("Avalon's scientific, technical, and other specialized knowledge regarding the devices is critical to the case, the spoliation issues, and trial.").

produced contained more 8,500 Word, Excel, PowerPoint, and PDF files copied to or accessed from the USBs after Walser learned of her termination from Adecco.

**Files Deleted from USBs.** The forensic analyses of 12 USB devices that the Former Employees connected to their Adecco laptops after May 12, 2020 and imaged by Avalon show they collectively contain 2.6M+ files; (2) 45,000+ Adecco files copied within a few days of them joining Staffworks; (3) Walser alone accessed more than 200 of these Adecco files after joining Staffworks, including over 40 after the case was filed and over 30 after the Court directed Defendants on July 10, 2020 to preserve all relevant evidence and warned of potential sanctions, Dkt. 21; and (4) over 800 of these Adecco files were deleted (over 40 after the case was filed and some as late as November 2020).

The forensic analysis of Walser's A018 USB shows 16 files deleted on or after June 1, 2020, ten deleted after Adecco's June 20, 2020 evidence preservation letter, nine deleted after the lawsuit was filed, and six others deleted on or after August 1, 2020. Ex. 2, Walser Dep. Ex. 138. The analysis of Walser's A019 USB shows that more than 570 files were deleted from this USB after May 26, 2020 and Walser testified she "d[id]n't know why [she] deleted them." *Id.* at 200-01. Walser's A029 USB shows that 198 files were deleted from this device, including after the case was filed. *Id.* at 39. Walser again had no explanation as to why she was deleting files after the suit was filed. *Id.* at 164. According to Standford, more than 400 files were deleted from her A017 USB after May 12, 2020 because she "didn't need them." Ex. 7, Standford Dep. 84. This same USB was used by Standford to "just download everything" before she left Adecco—including more than 7,900 Word, Excel, PDF, and PowerPoint files. *Id.* at 85, 156-57.

**Data and Communications from Phones.** Both Rodabaugh and Gloria factory reset their Adecco-Issued iPhones prior to turning them over for forensic imaging. Ex. 8, Gloria Dep. 139; Ex. 9, Rodabaugh Dep. 253; Dkt. 165 at 2 (noting devices were "factory reset" that there is "no data available" and that the "date when this occurred is unavailable"); Dkt. 143 at 3. According to Rodabaugh, she reset her Adecco iPhone because she was "very protective of [her] clients" and "very protective of [her] team" and she didn't want Adecco "to have any of that information." Ex. 9, Rodabaugh Dep. 251-52. Gloria's Adecco-issued iPhone was similarly reset because she "didn't want any of [her] information that was stored on it to go to anybody else." Ex. 8, Gloria Dep. 139; *see also* Ex. 10, Flint Dep. 237. Gloria also lost, destroyed, or upgraded "two or three" different iPhones that were not backed up after leaving Adecco. Ex. 8, Gloria Dep. 132-37. In August 2020, Kranz "needed a new phone" and asked her carrier "to take all e-mails, anything to do with Adecco off my phone" because she "didn't want nothing more to do with Adecco." Ex. 11, Kranz Dep. 126-27. Rohde and Fravel also got rid of phones used during the litigation and are not sure whether texts and information from those devices were preserved. Ex. 12, Rohde Dep. 269; Ex. 13, Fravel Dep. 206.

**Former Employees' Texts.**[4] Even though Gloria was aware of Adecco's June 2020 preservation letter and the Court's July 10, 2020 order, she did not take any steps in June or July 2020 to preserve evidence. Ex. 8, Gloria Dep. 141-43. Gloria is no longer has possession of any text messages from phones she used between June 8–July 2021. *Id.* at

---

[4] *See* Dkt. 205 at 5 ("The individual defendants must also provide any responsive text message information from any of their personal cell phones, or cell phones issued by Staffworks or Adecco, as used by the named defendants since 5/12/2020"); *see also id.* at 4 (directing production "on a rolling basis beginning immediately and to be completed by February 28, 2022").

137-38. Gloria was "sure" that she's deleted text message threads since July 2021 and indicated that she did no longer had any text threads with Defendants or clients from July 2021 to the present. *Id.* at 138-43. Flint was also aware of the Court's July 2020 evidence preservation order but still deleted all of her text messages with clients, Staffworks, and the Former Employees other than Walser and Gloria because she "didn't feel that anything else was important to keep." Ex. 10, Flint Dep. 100-03; *see also id.* at 54, 82, 234-35, 240. According to Fravel, when she left Staffworks in September 2021 she decided she was "washing [her] hands of the staffing industry" and deleted any information on her phone related to her time in staffing. Ex. 13, Fravel Dep. 47-49.

**Files Deleted from Adecco Laptops.** On June 8, 2020, Gloria "deleted everything" from her Adecco-issued laptop because she "didn't want anything on my Adecco computer." Ex. 8, Gloria Dep. 176-77. In total, Gloria deleted 797 files from the device. *Id.* at 188. The same day Flint resigned effective immediately from Adecco, she deleted 539 files from her Adecco laptop. Ex. 10, Flint Dep. 205. Additionally, while Flint was employed by Staffworks and Rohde was still with Adecco, Flint helped Rohde copy thousands of Adecco files to a USB at Gloria's suggestion and then helped Rohde delete 739 files over the course of two minutes. *Id.* at 183-85; Ex. 12, Rohde Dep. 262. Fravel also deleted 1,482 files from her Adecco-issued laptop the night before resigning on June 24, 2020 "just to clear it out." Ex. 13, Fravel Dep. 171. According to Fravel, she deleted the files from her laptop because she "kn[e]w that they go through everything" and she "didn't know what was on there." *Id.* at 171.

**Adecco's Corning Facebook Page and Messages.** Gloria permanently deleted the contents of Adecco's Corning Facebook page "shortly after [she] started at Staffworks" on

June 20, 2020. Ex. 8, Gloria Dep. 219, 222. According to Gloria, she first "deleted anything that had Staffworks on it still" and then, at Walser's request, deleted the page because there "[were] still two things that kept on showing up that said 'Adecco.'" *Id.* at 219. Gloria said she deleted the page because she "was asked to." *Id.* at 220. Gloria even delayed deleting the page so that Flint could "schedule" a "few people" that responded to a Staffworks job post made on the Corning Facebook page. Ex. 1, at SW_0159891. Immediately after Gloria deleted it, she sent Rohde and Flint screenshots confirming "Page deleted."[5] Although Gloria knew after it "could [be] restore[d] . . . within a certain amount of time," which Facebook confirmed was 14 days, Defendants took no steps from 6/20/20–7/4/20 to restore the Page or preserve the contents.[6]

**Staffworks Data Backups.** Staffworks confirmed short-term backups of its computer systems, databases, and user profiles, which were performed daily and monthly, are no longer available for the time period at issue—which Staffworks' corporate representative described as "kind of bad." Ex. 6, Staffworks 30b6 Dep. 223-26. Staffworks was unaware of the earliest date for which a long-term backup would be available. *Id.* at 224-26. While Staffworks purports to maintain emails indefinitely, this would not prevent a system user from deleting their emails from Staffworks' system. *Id.* at 233.

**Hardcopy Documents.** Walser testified that she prepared and presented a PowerPoint presentation titled "Partners in Progress" to Vitullo, Todd Consilio (Staffworks' SVP of Operations), Jennifer Williams (Staffworks' SVP of Human

---

[5] Ex. 8, Gloria Dep. 220–24; Ex. 1, at SW_0159169; Ex. 10, Flint Dep. 236; Dkt. 166-1 at 2.
[6] Dkt. 166-1 at 1; Ex. 8, Gloria Dep. 222; Ex. 10, Flint Dep. 236-37; Dkt. 169-1 at 3, 6; Dkt. 68-1 at 130–31 (data file would show, among other things, posts deleted, messages sent, and when).

Resources), and James Huey (Staffworks' outside CFO) on May 27, 2020, while Walser was still employed by Adecco. Ex. 2, Walser Dep. 173. During this several-hour meeting, Walser detailed pitch meetings she had already set up meetings for Staffworks with Felix Schoeller and Tessy Plastics, two of Adecco's largest clients in the region, and provided sales, gross margin, and client information for Adecco's Upstate New York region, and Elmira Corning, Canandaigua, Syracuse, Newark, and Felix Schoeller – Onsite branch offices, and discussed immediate revenue, "investment opportunity," and "expansion" plans for Staffworks based on stealing Adecco's existing market share. Ex. 14, Partners in Progress, Avalon 0298240; Ex. 2, Walser Dep. 96-97, 118, 172-77, 180; Ex. 5, Williams Dep. 125-26, 146. Walser also prepared detailed "Account Sheets" for key Adecco clients, including Felix Schoeller and Tessy Plastics, outlining Adecco's total sales, markup percentages, drug screening requirements, direct hire fee percentages, associate numbers, gross margin percentages, average bill and pay rates, total temporary employee hours and sales, and Adecco support staff for the clients, including salary information that were provided by Walser to all five attendees at the meeting. Ex. 2, Walser Dep. 124-28; Ex. 15, Consilio Dep. 125-29.[7]

All but a single copy of one Account Sheet and all notes related to Walser's May 27, 2020 meeting with Staffworks were destroyed. Ex. 6, Staffworks 30b6 Dep. 89-95. Walser testified that she asked for hardcopy handouts presented at the meeting to be given back and believes she "threw them out in the office." Ex. 2, Walser Dep. 126-27. Williams testified that she doesn't know where her notes from the meeting would be and that

---

[7] *See also* Ex. 2, Walser Dep. 45-46, 122-23, 170; Ex. 5, Williams Dep. 125-26, 135-36, 145-46; Ex. 3, Vitullo Dep. 227; Ex. 16, Felix 30b6 Dep. 127–28 (confirming Felix neither provided Walser with this nor was aware Walser was doing this).

13

"[t]hey're probably long gone." Ex. 5, Williams Dep. 243-44. Consilio testified that he didn't know where his notes from the meeting were and that he "was not told to preserve any documents." Ex. 15, Consilio Dep. 125-26. While Vitullo frequently makes handwritten notes on a legal pad or notebook, Ex. 5, Williams Dep. 81-82, she testified that she "do[esn't] keep paper notes" and throws them away as she crosses follow-up items off every week. Ex. 3, Vitullo Dep. 127. According to Huey, his notes are typically kept in cells of a spreadsheet and then "deleted" or scribbled on a notepad before becoming "confidential trash." Ex. 17, Huey Dep. 108-09. Thus, with the exception of a PowerPoint presentation and a handful of scheduling emails, Defendants destroyed virtually all evidence from the critical May 27 meeting. Ex. 6, Staffworks 30b6 Dep. 89-95.

      Second, there is no question that Plaintiffs have been substantially and unfairly prejudiced by Defendants' intentional, mid-litigation spoliation of evidence. As detailed above, Defendants' extensive spoliation encompassed thousands of documents, information and texts from numerous phones, data backups, resulted in the destruction of virtually all evidence relating to key meetings between Walser and Staffworks' executive team, and this spoliation continued months into the case. Through these efforts, Defendants systematically excluded Adecco from learning the full extent of their misconduct, including Defendants' use of Adecco's confidential business information to benefit Staffworks, a direct competitor of Adecco in the Upstate New York market. As a result, Adecco is left to build its case against Defendants using incomplete information and inferences drawn from spoliated evidence it has no ability to review. Meanwhile, the Former Employees have testified that they cannot recall details from the spoliated

evidence,[8] cannot remember the timeframes or circumstances of their extensive spoliation—despite the spoliation continuing into November 2020,[9] and have inserted a false narrative into the record in which they deny the very existence of the spoliated evidence.[10]

Third, Defendants' spoliation was intentional, done in bad faith, violated their preservation obligations, and violated various orders. Defendants' deposition testimony and other evidence produced during discovery shows they failed to produce this evidence with the intent to deprive Adecco of the information and with a "culpable state of mind." Fed. R. Civ. P. 37(e)(2); *Sawyer v. Locy*, 9:19-cv-879 (MAD/ATB), 2021 WL 4458822, *1 (N.D.N.Y. Sept. 29, 2021). For instance, several of the Former Employees provided false testimony during the preliminary injunction hearing and Staffworks' CFO admitted that Staffworks' President Anita Vitullo did so too.[11] As detailed in Dkt. 175, many of these misrepresentations were relied upon and specifically cited to by the Court in prior orders. *See e.g.*, Dkt. 175 at 6-7 (quoting Dkt. 105 at 4-5) ("[E]ach Defendant, with the exception of Defendant Walser, testified that they no longer have access to any Adecco documents, emails, or attachments.").

Defendants' destruction of evidence also violated several discovery orders, including Dkt. 21 ("remind[ing] Defendants that they are required to preserve all relevant

---

[8] Ex. 2, Walser Dep. 40-41, 43, 201; Ex. 8, Gloria Dep. 138; Ex. 10, Flint Dep. 220; Ex. 13, Fravel Dep. 47-48, 169-70.
[9] Ex. 2, Walser Dep. 42-43, 165, 201; Ex. 7, Standford Dep. 81-82, 85, 151; Ex. 12, Rohde Dep. 262-64; Ex. 8, Gloria Dep. 219; Ex. 10, Flint Dep. 100-01, 192.
[10] Dkt. 68 at 171, 186 (Walser); Dkt. 68-1 at 48-49, 168 (Rodabaugh), 79-80 (Gloria), 143 (Flint); Dkt. 35 at ¶ 25 (Flint); Dkt. 32 at ¶ 26 (Standford).
[11] Dkt. 68 at 171, 186 (Walser); Dkt. 68-1 at 48-49, 168 (Rodabaugh), 79-80 (Gloria), 143 (Flint); Ex. 17, Huey Dep. 127.

and/or discoverable evidence"), Dkt. 136 ("directing Defendants "to ensure that Staffworks maintains electronic information as discussed during the conference and previously ordered by the Court"), and orders setting or reaffirming the April 29, 2022 discovery deadline, *see, e.g.*, Dkt. 158 (setting April 29, 2022 discovery deadline); Dkt. 185 (ordering that "the discovery deadlines set forth in Dkt. No. [158] are firm and will not be extended for any reason"). *See also* Dkt. Nos. 181, 205; *Best Payphones*, 409 F. Supp. 3d at 135 (holding that party's failure to comply with discovery deadline set by court order constituted violation of discovery order for purposes of Rule 37(b) sanctions).

### C. Defendants' extensive spoliation cannot be adequately briefed in a three-page pre-motion letter.

Pre-motion letters are not intended as a vehicle to resolve the substance of proposed motions on the merits. *See* Individual Rules and Practices 2(A)(i) (noting that pre-motion letters are resolved either by (1) permitting filing of the proposed motion or (2) scheduling a conference with the parties to discuss issues raised in the pre-motion letter).[12] Adecco's proposed motion for sanctions encompasses ten Defendants, more than a dozen devices, and thousands of deleted files, in a case in which discovery has encompassed more than 1.3 million pages of productions, 35 depositions, and over 1,100 deposition exhibits. While memoranda of law in support of or opposition to a motion "may be up to 25 pages," pre-motion letters are "not to exceed three pages in length, double spaced." Individual Rules and Practices 2(A)(i), 2(C)(i).

---

[12] Under the Court's Individual Rules and Practices, the purpose of the pre-motion letter exchange is to "enable[] the Court to set an appropriate briefing schedule and to explore whether the motion may be (1) obviated by an amendment to the pleadings or by consent to the relief sought; or (2) deferred to a different junction in the case." Individual Rule 2(A)(i), n4.

16

Given the extensive scope of Defendants' spoliation, the fact-intensive analysis required in determining a party's entitlement to spoliation sanctions, *see Donini International, S.P.A. v. Sateck (U.S.A.)*, No. 03CIV9471, 2006 WL 695546, at *8 (S.D.N.Y. Mar. 16, 2006) (discussing "fact intensive" inquiry stressed by Second Circuit in crafting proper sanctions for spoliation of evidence), as well as the need to preserve arguments for potential appeal, Adecco's proposed motion cannot be briefed or resolved in a three-page pre-motion letter. Adecco should be entitled to file a fully briefed and supported motion in which it can better address those preliminary concerns raised by the Court's December 20, 2022 order. Dkt. 255.

### III. Conclusion

For these reasons, Adecco respectfully requests that the Court sustain Adecco's objections, permit Adecco to file its proposed motion within 21 days of the order resolving Adecco's objections, and consider the merits of Adecco's motion for sanctions related to Defendants' spoliation of evidence and violations of various orders after the motion has been fully briefed.

Respectfully submitted,

*/s/ Tyler Tarney*
Tyler Tarney         (0089082)
Tyler Martin         (0100845)
**GORDON REES SCULLY MANSUKHANI LLP**
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 340-5558
F: (614) 360-2130
Email:   ttarney@grsm.com
         tlewismartin@grsm.com
*Attorneys for Plaintiffs/Counterclaim Defendants Adecco USA, Inc. and ADO Staffing, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed with the Court on January 3, 2023 and served on all counsel of record via the Court's electronic filing system.


                              <u>/s/ *Tyler Tarney*</u>
                              Tyler Tarney        (0089082)